UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Vicki Lou Johnson,

    Plaintiff,

    v.                                                   Civil Action No. 2:15-cv-106

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 10, 11)

    Plaintiff Vicki Lou Johnson brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the second decision of the Commissioner of Social Security (Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Social Security Income (SSI).  Pending before the Court are Johnson's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm the same (Doc. 11).  For the reasons stated below, the Court GRANTS Johnson's motion, in part; DENIES the Commissioner's motion; and REMANDS for yet another decision.

## Background

    Johnson was 51 years old on her alleged disability onset date of June 30, 2010. She has a high school education and has taken specialized training courses in office management.  Her work history consists of working as an at-home daycare provider, an

office manager for an automotive repair company, and a registration representative at an emergency department.  She last worked in November 2008.  She is divorced and has three adult children.  As of November 2014, she was living in Jericho with her daughter and one of her sons when he was not working overseas.  (AR 2349.)

In July 2011, Johnson protectively filed applications for SSI and DIB.  Therein, she alleges that she has been disabled since June 30, 2010 due to neck and back pain, asthma, irritable bowel syndrome, a bleeding disorder, inoperable bleeding hemorrhoids, clinical depression, tremors in her right hand, left ankle pain, high blood pressure, and headaches.  Johnson testified at her first administrative hearing in January 2013 that she frequently drops things due to hand tremors; she has difficulty sitting and standing for long periods; she has pain in her left ankle, left knee, lower back, neck, and shoulders after standing for more than five minutes; and she has debilitating headaches a couple times a week.  (AR 42–43, 48, 51–52.)  Two years later, at her second administrative hearing in January 2015, Johnson again testified that she has approximately two migraines each week.  (AR 1532.)  She further testified that she has difficulty remembering things (AR 1533–34), and her neck pain has worsened, occurring on a daily basis and often requiring her to take pain medication or a muscle relaxant before getting out of bed in the morning (AR 1535).

On a typical day in January 2013, Johnson did minor household chores for short periods of time and with the help of her daughter, checked email, sewed for 10–15 minutes at a time, went to doctor appointments, and spent time sitting partially reclined with a heating pad on the back of her neck.  (AR 44–50.)  She exercised for 30 minutes

on a treadmill three days a week, resting for a couple of hours afterwards. (AR 48.) In January 2015, Johnson testified that she continued to exercise for up to 30 minutes at a time at least two to three times each week but felt exhausted and in pain when she was done and usually had to rest for the remainder of the day. (AR 1534–35.) She further testified that she was limited in her ability to engage in personal care activities, including getting dressed, washing her hair, and preparing meals. (AR 1536–37, 1539.) She stated that her hand shook "all the time," leaving her unable to hold anything and no longer able to do any quilting activities. (AR 1538.)

On January 24, 2013, after holding an administrative hearing on Johnson's claim, Administrative Law Judge (ALJ) Thomas Merrill issued a decision finding that Johnson was not disabled under the Social Security Act from her alleged onset date of June 30, 2010 through the date of the decision. (AR 19–30.) After the Appeals Council denied her request for review, Johnson sought judicial review of the ALJ's decision. On May 21, 2014, this Court issued an Opinion and Order (hereafter referred to as "the remand order") finding that the ALJ failed to follow the treating physician rule with respect to Dr. Edward Terrien's opinions and erred in his consideration of Johnson's migraine headaches and assessment of Johnson's credibility. (AR 1572–87.) Given these findings, the Court remanded the matter to the ALJ for further proceedings and a new decision.

On January 28, 2015, ALJ Merrill held a second administrative hearing on the claim. (AR 1529–42.) Thereafter, the ALJ issued a decision again finding that Johnson was not disabled from her alleged disability onset date through March 31, 2015, the date

3

of the decision. (AR 1494–1509.) The Appeals Council again denied Johnson's request for review, prompting her to file the Complaint in this matter on May 19, 2015. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant

bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis in his most recent decision, ALJ Merrill first determined that Johnson had not engaged in substantial gainful activity since her alleged disability onset date of June 30, 2010. (AR 1497.) At step two, the ALJ found that Johnson had the following severe impairments: "spondylosis[1] of the cervical and lumbar spine, migraines, and hemorrhoids." (*Id.*) Conversely, the ALJ found that Johnson's "[o]ther complaints and diagnoses"—including hypertension, hyperlipidemia[2], osteopenia[3], asthma and allergies, ankle impairment, left knee and hip pain, and affective disorder—were nonsevere. (AR 1497–99.) At step three, the ALJ determined that none of Johnson's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 1499–1500.) Next, the ALJ determined that Johnson had the RFC to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except

---

[1] "Spondylosis" refers to "any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 382100.

[2] "Hyperlipidemia" is a synonym for "lipemia," which is defined as, "[t]he presence of an abnormally high concentration of lipids in the circulating blood." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 192350, 229370.

[3] "Osteopenia" is defined as either "[d]ecreased calcification or density of bone," or "[r]educed bone mass due to inadequate osteoid synthesis." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 289180.

she cannot do rapid repetitive work with her right hand."[4] (AR 1500.) Given this RFC, and considering testimony from the vocational expert,[5] the ALJ found that Johnson was capable of performing her past relevant work as a hospital patient representative, an office manager, and a dog breeder. (AR 1509.) The ALJ concluded that Johnson had not been under a disability from the alleged onset date of June 30, 2010, through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence

---

[4] This RFC determination is the same as the one contained in the ALJ's initial decision. (*Compare* AR 25, 1500.)

[5] The ALJ took no testimony from the vocational expert at the second administrative hearing, excusing her at the start of the hearing, before Johnson testified. (AR 1531–32.) Therefore, the ALJ's citation in his most recent decision to "[t]he vocational expert's testimony" (AR 1509) must refer to the vocational expert's testimony at the first administrative hearing (*see* AR 57–66).

supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Johnson makes the following arguments in support of her request for reversal of the ALJ's decision: (1) the ALJ failed to follow the Court's remand order with respect to Dr. Terrien's opinions; (2) the ALJ erred in his evaluation of Johnson's carpal tunnel syndrome and hand tremors; (3) the ALJ failed to properly evaluate Johnson's migraine headaches; (4) the ALJ's RFC determination is not supported by substantial evidence; (5) the ALJ's adverse credibility assessment is not supported by substantial evidence; (6) the ALJ erred in finding that Johnson could return to her prior work; and (7) the record supports a finding that Johnson was disabled at step five.  (Doc. 10-1 at 9–24.)

Johnson further asserts that the Court should remand this matter solely for calculation of benefits.  (Doc. 14 at 10.)  The Commissioner opposes Johnson's motion, claiming that the ALJ properly evaluated Johnson's impairments, the medical opinions, and Johnson's credibility; and properly found that Johnson was able to return to her past relevant work.  (Doc. 11 at 14–25.)  For the reasons stated below, the Court once again finds in favor of Johnson on the substantive issues but remands for further proceedings and a new decision rather than for calculation of benefits.

**I.      The ALJ failed to comply with the Court's remand order.**

As noted above, the Court remanded Johnson's claim to the Commissioner approximately two years ago, primarily finding that the ALJ erred in his analysis of the opinions of treating physician Dr. Terrien.  (AR 1572–87.)  *See Johnson v. Comm'r of Soc. Sec.*, Civil Action No. 2:13-cv-217, 2014 WL 2118444 (D. Vt. May 21, 2014).  The Court explained:

> *The ALJ did not apply the treating physician rule to Dr. Terrien's opinions, and did not give good reasons for his decision to give those opinions "some limited weight."*  (AR 29.)  Under the treating physician rule, the ALJ should have determined if Dr. Terrien's opinions were supported by objective medical evidence and consistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).  Instead, the ALJ considered only that Dr. Terrien "did not explain what medical or other evidence supports his conclusions."  (AR 29.)  It is true that Dr. Terrien's opinions are bare; he provides no supporting or explanatory statements at all.  (AR 1400–05.)  It is even unclear if Dr. Terrien's opinions regarding Johnson's walking and standing limitations are based on Johnson's knee, ankle, and/or foot pain; cardiac problems; or other impairments.  (AR 1401.)  But the Second Circuit has held that a lack of specific clinical findings in a treating physician's report does not, in and of itself, justify an ALJ's failure to credit the physician's opinion.

8

*Id.* at *4 (emphasis added). The Court then went a step further, finding that–contrary to the ALJ's decision–Dr. Terrien's opinions were in fact supported by the record. The Court explained:

> *It cannot be said that the ALJ's error in analyzing Dr. Terrien's opinions was harmless because the medical record supports these opinions*, particularly regarding Johnson's walking, standing, reaching, and handling abilities. For example, in a June 2012 treatment note, orthopedist Dr. David Halsey assessed Johnson as having "[l]eft hip arthralgia and left knee arthralgia with paucity of radiographic findings," and recorded: "Arises from a seated position with left hip and left knee pain. On examination of her left hip, [Johnson] has restricted range of motion and guards combined hip flexion, internal rotation with reproduction of her thigh pain." (AR 1475.) In a December 2011 treatment note, physician's assistant Jessica Schwartz recorded that Johnson had "[p]alpable tenderness" in the spine, decreased cervical range of motion, and pain in the shoulders. (AR 413.) Schwartz assessed "chronic, worsening [neck pain] and radiculopathy in a C5 distribution likely due to C4–5 instability." (AR 414.) In February 2012, orthopedic surgeon Dr. Martin Krag noted that cervical spine MRIs from October 2011 showed "moderate broad-based central disk bulging at C5–6 and C6–7, with [slippage at] C4," and that cervical spine x-rays from December 2011 showed "moderate disk degeneration at C5–6 and mild degeneration at C6–7." (AR 404.) Although Dr. Krag stated there was no spinal cord or nerve root impingement to explain Johnson's "fairly diffuse upper limb pain," he felt the pain "could be referred symptoms from the neck," and some or all of the neck symptoms could be "discogenic, at any one or more of the C4–5, C5–6, and C6–7 levels." (*Id.*) As for Johnson's hand tremors, agency consultant Dr. Francis Cook found, based on his review of the record, that Johnson was limited in her ability to do handling and fingering activities with the right hand due to "[i]ntermittent resting tremor." (AR 75–76.) And finally, Johnson's coronary disease, necessitating placement of metal stents (AR 1348), may limit her ability to walk and stand for extended periods. All of this evidence is consistent with and supports Dr. Terrien's opinions regarding Johnson's physical limitations.

*Id.* (alterations in original) (emphasis added). The ALJ's new decision completely disregards these detailed findings. It also ignores the Court's guidance regarding

9

Johnson's migraine headaches and credibility assessment.  On these additional issues, the Court found as follows:

> (1) Given that remand is required to reconsider Dr. Terrien's opinions, the ALJ should also reassess and make findings on how Johnson's headaches impacted her ability to work.  Although the ALJ included a restriction against doing rapid repetitive work with her right hand, and this could possibly account for the hand tremors associated with Johnson's headaches, the ALJ did not make that connection in his decision.  Moreover, the ALJ did not consider the effect that Johnson's alleged difficulty thinking (as a result of her headaches) would have on her ability to work.
>
> (2) Taken as a whole, the record does not indicate that Johnson lived an active lifestyle or performed any physically exerting activity on a sustained basis.  On remand, in conjunction with a reevaluation of Dr. Terrien's opinions, the ALJ should also reassess Johnson's credibility, giving consideration to the alleged limitations discussed above.

*Id.* at *6, *7 (citations omitted).

The ALJ did not follow the Court's directives, particularly regarding Dr. Terrien's opinions, again concluding in his most recent decision that those opinions are unsupported, stating: "There was nothing to support Dr. Terrien's opined limitations." (AR 1508.)  The ALJ does not indicate how much weight, if any, he afforded to Dr. Terrien's opinions (*see* AR 1507–08), and the Commissioner concedes this point (*see* Doc. 11 at 18 ("the ALJ did not specify the weight he gave to Dr. Terrien's opinion[s]")).  Not only does the ALJ's new decision fail to properly apply the treating physician rule, for a second time, it also fails to meaningfully consider the more than 600 pages of new medical evidence submitted by Johnson on remand, stating merely: "claimant submitted a large number of medical records since the initial hearing[; t]hese treatment notes do not

document deterioration and contain no opinion statement suggesting the claimant's condition has deteriorated."  (AR 1506; *see* AR 1703–2352.)  The new medical records, however, show continued left knee, ankle, back, and neck pain; additional problems with Johnson's left arm; worsening tremor in her right hand; and diagnoses of fibromyalgia and carpal tunnel syndrome.  (*See, e.g.*, AR 1732, 1734, 1823, 1830, 1853, 1855, 1918, 1935, 1948, 1954, 1962, 2001, 2106, 2211, 2293–94, 2352.)  Furthermore, the ALJ's new decision inexplicably challenges Dr. Terrien's status as a treating physician (*see* AR 1508 ("The 'treating source rule' does not apply to [Dr. Terrien].")), an issue which was not even considered by the ALJ, the Commissioner, Johnson, or the Court in the initial case; and a challenge which the Commissioner herself now concedes was improper (*see* Doc. 11 at 18 ("the ALJ erred in finding that Dr. Terrien is not a treating physician")).

      The ALJ's failure to follow the Court's remand order with respect to the opinions of Dr. Terrien is reversible error.  *See Sullivan v. Hudson*, 490 U.S. 877, 886, 109 S. Ct. 2248 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 145, 60 S. Ct. 437 (1940) ("On review the court may thus correct errors of law and on remand the Commission is bound to act upon the correction."); *Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997) ("The 'law of the case' doctrine . . . applies to administrative agencies on remand.  Thus, if the District Court actually found that [the claimant] needed to lie down, the ALJ would be bound by that finding.") (citations omitted); *Butler Lime & Cement Co. v. Occupational Safety & Health Review Comm'n*, 658 F.2d 544, 549 (7th Cir. 1981) ("The rule that an

administrative agency is limited on remand by the instructions of the reviewing court is settled beyond question."); *Nettleton v. Astrue*, No. 3:11 CV 1357(JBA), 2012 WL 7832625, at *2 (D. Conn. Feb. 27, 2012), *report and recommendation adopted in Nettelton v. Astrue*, Civil No. 3:11cv1357 (JBA), 2013 WL 1390042 (D. Conn. Apr. 4, 2013) ("It is well[] settled that deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.") (internal quotation marks and alterations omitted); *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1217 (C.D. Cal. 2005) ("ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court *are* the law of the case."); *Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) ("On the remand of a case after appeal, it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation.") (internal quotation marks omitted). Two legal doctrines support this conclusion: (1) the doctrine of the law of the case, under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case," *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993); and (2) the rule of mandate, which requires that "on remand, the lower court's actions must be consistent with both the letter *and the spirit* of the higher court's decision," *Ischay*, 383 F. Supp. 2d at 1214. *Nettleton*, 2012 WL 7832625, at *2, *report and recommendation adopted in Nettelton*, 2013 WL 1390042.

Notably, despite the multitude of cases holding that ALJs are bound by district court remand orders, the Commissioner barely responds to Johnson's argument that the

ALJ failed to follow the Court's remand order regarding Dr. Terrien's opinions. (Doc. 11 at 18 ("The Commissioner respectfully submits that the ALJ properly decided the case at issue upon remand from the Court.").) Not only is this failure to respond in apparent indifference to this well-settled law, it also disregards several recent orders of this Court which explicitly state that ALJs are obligated to follow the directives of district court remand orders. *See, e.g.*, *Stanzione v. Colvin*, Civil Action No. 2:14-cv-224, 2016 WL 111430, at *4 (D. Vt. Jan. 11, 2016) ("[T]he ALJ's failure to follow the dictates of the Court's Remand Order . . . is reversible error."); *Freegard v. Comm'r of Soc. Sec.*, No. 1:14-cv-34-jgm-jmc, 2015 WL 471703, at *5 (D. Vt. Feb. 4, 2015) ("The ALJ's failure to follow the Court's Order . . . is, in and of itself, reversible error."); *Betourney-Pavao ex rel. Mandly v. Comm'r of Soc. Sec.*, No. 5:14-CV-00011, 2014 WL 6908123, at *6 (D. Vt. Dec. 8, 2014) ("The ALJ ignored the court's remand order, which is reversible error.")

The ALJ's use of the word "alleged" in his decision in the context of describing the Court's remand order is an indicator of a deliberate decision not to follow the law of the case doctrine. The ALJ stated: "The United States District Court has remanded this matter *alleging* that I found that the claimant had significant limitation by concluding that [Johnson's] alleged headaches/migraine[s] w[ere] severe, and failed to include limitation within the [RFC] finding" (AR 1506) (emphasis added), and: "The United States District Court has remanded this matter *alleging* that I did not apply the 'treating source rule' to the opinions of Edward Terrien, MD" (AR 1508) (emphasis added). A federal district court does not make "allegations" in an order remanding a social security disability

13

appeal.  Rather, the court directs the Commissioner to correct the noted errors on remand; and the Commissioner is obligated to correct those errors in the manner described by the court.  *See Holst v. Bowen*, 637 F. Supp. 145, 147 (E.D. Wash. 1986); *Nettleton*, 2012 WL 7832625, at *3, *report and recommendation adopted in Nettelton*, 2013 WL 1390042.  The ALJ may not ignore the Court's mandate or purport to override and correct its perceived errors.  *Holst*, 637 F. Supp. at 147.  As explained in *Holst v. Bowen*:

> Historically, the system has operated in hierarchical fashion with decisional power vested, in ascending order, in an [ALJ], the Appeals Council, the district court, the court of appeals, and the Supreme Court.  The Supreme Court overrules appellate court decisions, not the other way around.  The court of appeals overrules decisions of the trial court, not the other way around.  And the district court overrules the Appeals Council, not the other way around.

*Id.* at 147–48 (footnotes and citations omitted).  Thus, the Commissioner was obligated to abide by the Court's directives in its remand order.  The ALJ's failure to follow these directives not only diminishes the effectiveness of the disability appeals system as a whole, it wastes the time of the Social Security Administration, the Court, and most importantly, the claimant, who initially filed her application for disability benefits in July 2011, almost five years ago.

For the reasons stated in the Court's 2014 remand order, *see Johnson*, 2014 WL 2118444, at *4–7, the Court once again remands Johnson's claim to the Commissioner, this time explicitly directing the ALJ to afford great weight to Dr. Terrien's opinions.  The Court also directs the ALJ to consider the additional medical evidence submitted by Johnson after the ALJ's prior decision.  Furthermore, the ALJ is ordered to reconsider Johnson's migraine headaches, hand tremors, and credibility, *taking into account the*

14

*findings made in the Court's initial remand order*. *Id.* Given that new decisions at earlier steps in the sequential evaluation process will affect the ALJ's RFC determination and other aspects of the decision, the Court once again does not reach Johnson's claims at steps four and five, *see Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.)," except to note that the ALJ shall present new hypotheticals to the vocational expert after reassessing the above issues on remand.

## II.     Reversal for a calculation of benefits is not appropriate.

When, as here, a determination of non-disability is not supported by substantial evidence, the court must decide whether to reverse and remand for rehearing or reverse and order benefits granted. 42 U.S.C. § 405(g) (court has authority to affirm, modify, or reverse Commissioner's decision "with or without remanding the cause for rehearing"); *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157 (1991). Johnson argues that the Commissioner's most recent decision should be reversed and the matter remanded solely for calculation of benefits.

The Second Circuit has stated that in some cases it is appropriate to remand for calculation of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision" and evidence of disability is overwhelming. *Butts*, 388 F.3d at 385; *see Shaw*, 221 F.3d at 135 (reversing ALJ decision for refusal to follow treating physician rule, but holding remand for further proceedings unnecessary because record provided "overwhelming proof" that claimant suffered from listed impairment). Where, however, "the administrative record contains

15

gaps," or where "further findings would . . . plainly help to assure the proper disposition of [the] claim," remand for a rehearing is appropriate. *Butts*, 388 F.3d at 385. The evidence of disability in this case is not so overwhelming that further proceedings would be pointless. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (holding remand for calculation of benefits inappropriate because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless"). As discussed above, once the ALJ reanalyzes the medical opinions, reassesses Johnson's credibility, and makes a new RFC determination, further testimony from a vocational expert will be required to determine what, if any, jobs Johnson can do and whether they exist in significant numbers in the national economy. Accordingly, Johnson's request that the matter be reversed solely for a calculation of benefits is DENIED. *See, e.g.*, *Michaels v. Colvin*, 621 F. App'x 35, 39 (2d Cir. 2015) (remanding for further proceedings where "hypotheticals are not currently sufficient to resolve the Step[-]Five inquiry, because it is not clear that they accurately represented [plaintiff's] limitations"); *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (remanding for further proceedings where ALJ erred by not determining whether plaintiff's reaching limitation precluded reliance on the Grids and where ALJ failed to obtain vocational expert testimony on the issue); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations.") (citation omitted).

**Conclusion**

The ALJ's post-remand decision disregards the directives of this Court, thereby "disrupt[ing] the very nature of the hierarchical system of Social Security Appeals," *Myers v. Colvin*, Civil Action No. 4:14cv32, 2015 WL 3830972, at *19 (E.D. Va. June 18, 2015), and further prolonging an already protracted process. Although the Court is aware of the formidable backlog of cases the Commissioner has before her,[6] that cannot excuse a failure to comply with the applicable regulations and case law in deciding disability cases.

For the reasons stated above, the Court GRANTS Johnson's motion (Doc. 10), in part; DENIES the Commissioner's motion (Doc. 11); and once again REMANDS for further proceedings and a new decision in accordance with this Order and the Court's initial remand order. In light of the time elapsed since Johnson's initial filing for benefits—over five years, in part due to the ALJ's failure to comply with the directives contained in the Court's initial remand order—this claim should receive expedited consideration on remand.

Finally, the Court recommends that the Commissioner assign the case to a different ALJ on remand. Although the Court does not find sufficient evidence of bias, hostility, or prejudice to entitle Johnson to an automatic review by a different ALJ, it is in the Commissioner's best interest to appoint a new ALJ to maintain an appearance of fundamental fairness and impartiality in resolving Johnson's claim. *See Johnson v.*

---

[6] This awareness is particularly acute, given that district courts are now also experiencing a backlog of disability cases.

*Astrue*, Civil No. 3:10-CV-1023 (VLB), 2011 WL 2938074, at *2 (D. Conn. Feb. 15, 2011) ("when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate").

Dated at Burlington, in the District of Vermont, this 16th day of May, 2016.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge